OPINION
{¶ 1} Shane Ramey was indicted for aggravated murder with specifications, felony murder, having a weapon under disability, and attempted aggravated murder with a specification. The jury found Ramey guilty of having a weapon under disability and not guilty of the other charges. The trial court sentenced Ramey to five years imprisonment, the maximum *Page 2 
sentence for having a weapon under disability.
 I {¶ 2} Ramey advances one assignment of error on appeal:
 {¶ 3} "THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL AND HIS RIGHT TO A JURY TRIAL UNDER THE FEDERAL AND STATE CONSTITUTIONS BY PUNISHING HIM FOR BEHAVIOR OF WHICH THE JURY ACQUITTED HIM."
 {¶ 4} The gist of Ramey's assignment of error is that the trial court improperly imposed a maximum sentence to punish him for fooling the jury into believing he had acted in self-defense. Ramey relies on the following statement by the trial court as evidence of his contention:
 {¶ 5} "But the bottom line is that if I really believed for one second that, Mr. Ramey, that you retrieved that gun to protect yourself or to innocently take it to your mother's house before calling the police, I would probably just give you credit for time served and let you walk out of here today.
 {¶ 6} "You may be able to fool the jury, but I was convinced beyond a reasonable doubt that you retrieved that gun for retaliation. Had you had that gun on your person when Donte Trent was chasing you on Freemont and you pulled the gun and shot him, that would have been a clear case of self-defense.
 {¶ 7} "And incidentally, I believe Donte Trent should be prosecuted for attempting to stab you on Freemont; but two wrongs don't make a right. You should have called the police. You should never have had a gun because you are under a disability. I don't believe Donte *Page 3 
Trent was chasing you on Liberty; but even if he was, all you had to do was drive away. But you chose to stop and fire shots at him, and that resulted in the death of Charles Trent.
 {¶ 8} "I've never seen a self-defense case where the defendant was chasing the victim firing multiple shots when the victim didn't even have a weapon because there's no way that that knife was ever brandished on Liberty Street, not when it was found under the car seat.
 {¶ 9} "So while you may be able to pull one over on the jury, I want you to know that I know there was no self-defense."
 II {¶ 10} Our review involves the two-step process announced in State v.Kalish, 120 Ohio St.3d 23, 2008-Ohio-4912:
 {¶ 11} "* * * appellate courts must apply a two-step approach when reviewing felony sentences. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard."
 {¶ 12} Ramey appears to concede that the sentence here is lawful. (Step 1). The issue thus comes down to whether Ramey has demonstrated an abuse of discretion. (Step 2).
 {¶ 13} We have recently addressed a situation in which a trial court considered offenses of which the defendant had been acquitted in imposing the sentence for the offense of which he was convicted. InState v. Huber, Clark App. No. 2005 CA 45, 2006-Ohio-3514, Huber was charged with seven counts of rape and one count of gross sexual imposition. He was found not guilty of the rape charges, but guilty of GSI. Huber claimed on appeal that the trial court erred *Page 4 
in basing his sentence on a pattern of abuse because he was only convicted of one count of GSI. We said in part:
 {¶ 14} "For purposes of sentencing, a trial court is entitled to take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted. State v. Wiles (1991),59 Ohio St.3d 71, 77, 571 N.E.2d 97, citing United States v.Donelson (C.A.D.C. 1982), 695 F2d 583; State v. Epley (Aug. 25, 1998), Franklin App. No. 97AP-1467, citing United States v. Watts (1997),519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554. `Acquittal does not have the effect of conclusively establishing the untruth of all the evidence introduced against the defendant.' U.S. v. Sweig (C.A. 2, 1972),454 F2d 181, 184. Thus, the trial court did not err in considering the pattern of abuse about which the state presented evidence, despite the fact that Huber was convicted of only one offense. We will presume that the other charged conduct of which Huber was not convicted but upon which the trial court relied was, in the court's judgment, established by a preponderance of the evidence. Watts, 519 U.S. at 157."
 {¶ 15} Ramey attempts to distinguish this case from Huber and the cases upon which it relies by pointing out that the acquittal here is based on a finding of self-defense rather than a failure of proof beyond a reasonable doubt of the charged offenses. While this is indeed a distinction, we are not persuaded that it is legally significant. If a trial judge may consider offenses of which the jury has acquitted if he or she believes those offenses were supported by a preponderance of the evidence, Id., why should a judge not consider charges of which the jury has acquitted on the basis of self-defense where the judge believes that self-defense has not been proven? From what we know of the fatal encounter from the above-quoted statement of the trial *Page 5 
court — the trial transcript is not part of the record on appeal — the trial court's skepticism about Ramey's claim of self-defense does not appear to be unreasonable. There is no reason to believe the State failed to prove beyond a reasonable doubt the elements of the offenses of which Ramey was acquitted.
 III {¶ 16} The trial court's judgment entry of conviction, filed four days after sentencing, expressly states that the court considered the principles and purposes of sentencing under R.C. 2929.11 and balanced the seriousness and recidivism factors under R.C. 2929.12. In an entry overruling Ramey's motion to stay judgment and to set an appellate bond, the trial court stated it had "reconsidered these same factors."
 {¶ 17} The trial court referenced convictions of felonious assault and robbery-aggravated felonies of the second degree — for which Ramey had been sentenced to concurrent terms of 5 — 15 years in the penitentiary and a more recent conviction for carrying a concealed weapon.
 {¶ 18} The court then stated:
 {¶ 19} "The Court has re-considered the nature of the offense and resulting harm. Not only did the defendant possess a firearm while under disability, which completes the crime in and of itself, but the firearm at issue was loaded, brandished, and fired at two people. Most significantly, as a proximate result of the defendant committing the crime of having weapons while under disability, Charles Trent died. The Court stated at disposition, `[y]ou should never have had a gun because you are under a disability * * * you chose to stop and fire shots * * * and that resulted in the death of Charles Trent.'" *Page 6 
 {¶ 20} The court had observed at sentencing that Charles Trent appeared to be an innocent victim.
 {¶ 21} The trial court expressed a dim view of Ramey's prospects for rehabilitation based on Ramey's criminal record that includes "violent and weapons-related offenses," and Ramey's current weapons under disability conviction following completion of community control on the 2003 CCW charge, for which charge Ramey had been shown "considerable mercy," including dismissal of a weapons under disability count.
 {¶ 22} The court observed that at trial Ramey's own testimony might have supported a charge of tampering with evidence. Finally, the trial court found a proposed mitigating factor was entitled to no weight as it was not credible:
 {¶ 23} "A mitigating factor proposed by the defendant herein was one he espoused while testifying at trial. He denied obtaining the loaded firearm for the purpose of retaliating on Donte Trent. Rather, he testified that, in an effort to avoid what he perceives as perpetual `bad luck with the police,' he was simply and innocently relocating the gun from the confines of his house to his mother's house before calling them reference the Fremont incident.[3]
 {¶ 24} [FN3] "Specifically, the defendant testified, `Well, when I said I was going to call the police, I got to thinking like oh, man, if I'm going to call the police, I got to get this gun out of here cause I had a gun in the house * * * I told Helen I'm about to go to my mom's house is exactly what I said. All I was planning to do was go drop this gun off and come back. That's what I wanted to do cause I just have sort of like bad luck with the police.'
 {¶ 25} "If true, this proposed mitigating factor, in the interest of justice and mercy, would override the typical sentencing and bond criteria set forth above. Evidence of the Court's *Page 7 
position on this issue is found in the sentencing transcript where the Court stated, `[I]f I really believed for one second that, Mr. Ramey, that you retrieved that gun either to protect yourself or to innocently take it to your mother's house before calling the police, I would probably just give you credit for time served and let you walk out of here today.'
 {¶ 26} "Where, on the other hand, the Court is not convinced of the veracity of this proposed mitigating factor, the Court is mandated to revert back to the typical sentencing and bond criteria set forth above.
 {¶ 27} "The Court, based upon sound reason, common sense, the testimonial and physical evidence presented at trial, and a careful evaluation of the defendant's testimony and demeanor on the witness stand, cannot, in good conscience, believe that the defendant's purpose for possessing the loaded firearm on the date and time at issue was the innocent one he espoused at trial. Even defense counsel had to concede in closing argument that the defendant's explanation for possessing the loaded firearm is `stupid.'[4]
 {¶ 28} [FN4] "Counsel's statement was that the defendant `got in the car to try to take the gun over, it's a stupid enough story it's probably true about why you're trying to get rid of a gun.'
 {¶ 29} "The Court finds that the proposed mitigating factor is not credible, and accordingly, the Court has assigned it no weight.[5]
 {¶ 30} [FN5] "A sentencing court has the authority to make an independent, judicial determination that the defendant's trial testimony contained willful and material falsehoods, and then to consider the same at sentencing and/or while ruling on an appellate bond motion.United States v. Grayson, 438 U.S. 41 (1978)." *Page 8 
 IV {¶ 31} Despite the trial court's less than respectful language at sentencing about the jury which heard the case, this record demonstrates no abuse of discretion on the part of the trial court in imposing the sentence it did. The assignment of error is overruled.
 {¶ 32} The judgment will be affirmed.
BROGAN, J. and GRADY, J., concur.
Copies mailed to:
Amy M. Smith Jon Paul Rion Hon. Douglas M. Rastatter *Page 1