[Cite as *State v. Bray*, 2011-Ohio-4660.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                                          :

    Plaintiff-Appellee                           :          C.A. CASE NO. 2010 CA 14

v.                                                              :          T.C. NO.     09CR542

MICAH BRAY                                          :          (Criminal appeal from
                                                Common Pleas Court)

    Defendant-Appellant                         :

                                                                 :

. . . . . . . . . .

## O P I N I O N

Rendered on the ___16th___ day of ___September___, 2011.

. . . . . . . . . .

ANDREW R. PICEK, Atty. Reg. No. 0082121, Assistant Prosecuting Attorney, 50 E. Columbia Street, 4th Floor, P. O. Box 1608, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellee

CHARLES M. BLUE, Atty. Reg. No. 0074329, 401 E. Stroop Road, Kettering, Ohio 45429
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}   Defendant-appellant Micah Bray appeals his conviction and sentence for one count of possessing a weapon while under disability, in violation of R.C. 2923.13(A)(3), a felony of the third degree; one count of illegal possession of a firearm in a liquor permit premises, in violation of R.C. 2923.121, a felony of the third degree; carrying a concealed

weapon, in violation of R.C. 2923.12(A)(2), a felony of the fourth degree; and one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree.

{¶ 2}   Bray filed a timely notice of appeal with this Court on February 5, 2010.

I

{¶ 3}   The incident which forms the basis for this appeal occurred during the early morning hours of May 30, 2009, at the Knights of Pythias, a social club in Springfield, Ohio. Bray was at the club with two of his cousins and another friend.   Also inside the club were William Blaine Lewis and Diron Upshaw, two men identified as regulars by the club staff.

{¶ 4}   After midnight, some members of the club became aware that Lewis and Upshaw were armed with handguns.   When they were asked to leave the club, Lewis and Upshaw informed the members that Bray was also carrying a handgun.   Bray was then asked to leave, as well.

{¶ 5}   As the men were being escorted out of the club, Bray and Lewis began arguing with each other.   Bray testified that Lewis and Upshaw were attempting to rob him of his money and jewelry.   After Bray allegedly poked Lewis in the side of his head, Lewis punched Bray, and the two men fell to the floor.   During the ensuing struggle, two shots were fired from a .38 caliber revolver owned by Bray both of which struck Lewis. Immediately after the shooting, Bray got up and ran from the club.   Lewis died at the scene.

{¶ 6}   The .38 caliber revolver was not recovered by the police, and Bray testified that he did not remove it from the club following the shooting.   Two live .38 caliber cartridges were recovered from the vehicle in which Bray left the club.   Bray was not apprehended until approximately three weeks later on June 19, 2009, after officers received a

tip that he was hiding out at a local hotel. Bray was arrested and taken into custody after a short foot-chase.

{¶ 7} On June 30, 2009, Bray was indicted for two counts of murder, one count of attempted murder, two counts of felonious assault, one count of possessing a weapon while under disability, one count of illegal possession of a firearm in liquor permit premises, and tampering with evidence. Shortly thereafter, Bray was indicted for another count of carrying a concealed weapon in Case No. 2009 CR 732, but that case was consolidated with the instant case, 2009 CR 542. Prior to trial on December 15, 2009, Bray plead no contest to the count of having a weapon while under disability. The trial court found him guilty and sentenced him to three years in prison.

{¶ 8} Following a jury trial during which he argued that he was acting in self defense, Bray was acquitted of the murder charges, as well as the charges for attempted murder and felonious assault. The jury, however, found Bray guilty of illegal possession of a firearm in a liquor permit premises, carrying a concealed weapon, and tampering with evidence. On January 10, 2010, Bray was sentenced to five years in prison for tampering with evidence, five years for illegal possession of a firearm in a liquor permit premises, eighteen months for carrying a concealed weapon, and one year for a criminal non-support charge in a separate case.

{¶ 9} We note that the trial court stated in its second amended judgment entry that it "merged' the counts of carrying a concealed weapon and illegal possession of a firearm in a liquor permit premises for the purposes of sentencing. However, the trial court sentenced Bray separately on these two guilty findings. Accordingly, the trial court's terminology of

merger of the counts of carrying a concealed weapon and illegal possession of a firearm in a liquor permit premises was not a merger of convictions, but merely an order that the sentences for both offenses be served concurrently. The trial court ordered that the remainder of Bray's sentences be served consecutively in addition to the three years for having a weapon while under disability, for an aggregate prison term of fourteen years.

{¶ 10} It is from this judgment that Bray now appeals.

II

{¶ 11} Bray's first assignment of error is as follows:

{¶ 12} "THE TRIAL COURT ERRED BY CONVICTING THE APPELLANT OF MULTIPLE ALLIED OFFENSES OF SIMILAR IMPORT."

{¶ 13} In his first assignment, Bray contends that possessing a weapon while under disability, illegal possession of a firearm in a liquor permit premises, and carrying a concealed weapon are allied offenses of similar import. Accordingly, Bray asserts that the court erred when it refused to merge the charges and convicted him separately on each count.

{¶ 14} R.C. 2941.25, concerning allied offenses of similar import, provides:

{¶ 15} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 16} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of

all of them."

{¶ 17} "R.C. 2941.25 codifies the double jeopardy protections in the federal and Ohio constitutions, which prohibit courts from imposing cumulative or multiple punishments for the same criminal conduct unless the legislature has expressed an intent to impose them. R.C. 2941.25 expresses the legislature's intent to prohibit multiple convictions for offenses which are allied offenses of similar import per paragraph (A) of that section, unless the conditions of paragraph (B) are also satisfied." *State v. Barker*, 183 Ohio App.3d 414, 2009-Ohio-3511, ¶22, citing *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, overruled on other grounds by *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314.

{¶ 18} In *Johnson*, the Ohio Supreme Court recently clarified the process by which courts determine whether offenses are allied offenses of similar import. *Johnson* overruled *Rance* "to the extent that it calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25." *Johnson* at ¶44. Now, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." Id.

{¶ 19} *Johnson* states that "the intent of the General Assembly is controlling." Id. at ¶46. "We determine the General Assembly's intent by applying R.C. 2941.25, which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct." Id. The trial court must determine prior to sentencing whether the offenses were committed by the same conduct. The court no longer must perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject

to merger.  Id. at ¶47  "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other.  If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import."  Id. at ¶48 (internal citation omitted).

{¶ 20} "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'"  Id. at ¶49 (citation omitted).  "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged."  Id. at ¶50.  "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge."  Id. at ¶51.

{¶ 21} Recently, we held that the trial court did not err in convicting and sentencing the defendant separately for carrying a concealed weapon, illegal possession of a firearm in liquor permit premises, and having a weapon while under disability. *State v. Young*, Montgomery App. No. 23642, 2011-Ohio-747.  Similar to the instant case, the defendant in *Young* was at a bar when he got into an argument with another patron.  During the argument, the defendant brandished a gun and fired several shots inside the bar. Id.  The defendant killed the patron that he was arguing with, as well as wounding five others. Id.

{¶ 22} "Young, a person under disability, necessarily acquired a handgun sometime

before concealing it on his person. Thus, the elements of proof for having a weapon while under disability were satisfied when Young acquired the firearm. His subsequent conduct of concealing the handgun constituted a separate and distinct act from initially acquiring the weapon. Similarly, Young acquired the handgun and concealed it on his person before entering a liquor-permit establishment. His subsequent conduct of bringing the weapon into a bar constituted a separate and distinct act from acquiring and concealing it. As a result, each of these offenses was committed separately under R.C. 2941.25(B). Therefore, even if the crimes were allied offenses under R.C. 2941.25(A), the trial court did not err in convicting and sentencing Young separately for carrying a concealed weapon, illegal possession of a firearm in a liquor-permit establishment, and having a weapon while under disability." *Young*, 2011-Ohio-747, at ¶49.

{¶ 23} In the instant case, Bray testified that he acquired the handgun from a friend two to three years prior to the shooting at the Knights of Pythias. Additionally, Bray testified that he had the gun in his possession when he decided to go out on the evening in question. Thus, sufficient evidence was adduced to support the charge of having a weapon while under disability when Bray acquired the handgun. Bray subsequently concealed the handgun, constituting a separate and distinct act from initially acquiring it. Lastly, Bray acquired and concealed the handgun on his person before entering the club, a liquor permit establishment. Each of these offenses was committed separately under R.C. 2941.25(B), and the trial court did not err when it convicted and sentenced Bray separately for each offense.

{¶ 24} Bray's first assignment of error is overruled.

III

{¶ 25} Bray's second assignment of error is as follows:

{¶ 26} "THE TRIAL COURT ERRED IN SENTENCING BY NOTIFYING THE DEFENDANT THAT HE WAS SUBJECT TO MANDATORY POST RELEASE CONTROL AND IMPOSING MAXIMUM CONSECUTIVE SENTENCES."

{¶ 27} In his second assignment, Bray argues that the trial court abused its discretion when it imposed maximum consecutive sentences because application of the factors contained in R.C. 2929.12 "clearly indicate the offenses are not 'offenses of the worst nature of these types of offenses,' nor 'that there is a great likelihood, if not the greatest likelihood, of recidivism,' as found by the trial court."   Bray also asserts that the trial court erred when it informed him that upon release from prison, he was subject to period of mandatory post-release control.

{¶ 28} A trial court has broad discretion in sentencing a defendant and a reviewing court will not interfere with the sentence unless the trial court abused its discretion.  *State v. Reese*, Mont. App. No. 21825, 2007-Ohio-6696; *State v. Durham*, Mont. App. No 21589, 2007-Ohio-6262; *State v. Rose*, Mont. App. No. 21673, 2007-Ohio-4212; *State v. Slone*, Greene App. No. 2005 CA 79, 2007-Ohio-130.   The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 54.   A court will not typically be found to have abused its discretion in sentencing if the sentence it imposes is within the statutory limits.  *State v. Muhammad*, Cuyahoga App. No. 88834, 2007-Ohio-4303; *State v. Burge* (1992), 82 Ohio App.3d 244, 249.

{¶ 29} After *Foster*, trial courts are not required to make any findings or give reasons before imposing any sentence within the authorized statutory range, including maximum, consecutive, or more than minimum sentences, *Foster,* syllabus at ¶ 7. Courts, nevertheless, are still required to comply with the sentencing laws unaffected by *Foster*, such as R.C. 2929.11 and 2929.12 which require consideration of the purposes and principles of felony sentencing and the seriousness and recidivism factors. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855. However, a sentencing court does not have to make any specific findings to demonstrate its consideration of those general guidance statutes. *Foster* at ¶ 42; *State v. Lewis*, Greene App. No. 06 CA 119, 2007-Ohio-6607. And, where the record is silent, a presumption exits that the trial court has considered the factors. *State v. Adams* (1988), 37 Ohio St.3d 295, 297. Further, where a criminal sentence is within statutory limits, an appellate court should accord the trial court the presumption that it considered the statutory mitigating factors. *State v. Taylor* (1992), 76 Ohio App.3d 835, 839; *State v. Crouse* (1987), 39 Ohio App.3d 18, 20. Consequently, the appellant has an affirmative duty to show otherwise.

{¶ 30} Initially, we note that Bray concedes that the sentences imposed by the trial court are within the applicable statutory ranges for the offenses. We also note that the trial court affirmatively stated in its second amended judgment entry that it considered both R.C. 2929.11 and 2929.12 before imposing sentence. At the sentencing hearing the trial court discussed Bray's extensive criminal record including convictions for receiving stolen property, misdemeanor drug abuse, negligent assault, three separate domestic violence incidents, disorderly conduct, attempted tampering with evidence, and tampering with

evidence. The trial court also noted that Bray testified that he was arranging an illegal drug sale on the day of the shooting and specifically found his testimony regarding his use of the handgun to not be credible. It is clear from the record that the trial court did not abuse its discretion when it considered the appropriate statutory factors before sentencing Bray to maximum consecutive sentences.

{¶ 31} Upon review, we also conclude that the trial court did not err when it informed Bray that he was subject to a mandatory period of post-release control. R.C. 2967.28(B) states in pertinent part:

{¶ 32} "(B) Each sentence to a prison term *** for a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened to cause physical harm to a person shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment. *** Unless reduced by the parole board pursuant to division (D) of this section when authorized under that division, a period of post-release control required by this division for an offender shall be one of the following periods:

{¶ 33} "(3) For a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened physical harm to a person, three years."

{¶ 34} Bray asserts that the trial court did not comply with the relevant statutes because none of the offenses for which he was convicted contained the elements of causation or attempted causation of physical harm. We note that R.C. 2967.28(B) does not require that the offense contain the elements of causation or attempted causation of physical harm.

The statute merely requires that, during the commission of the offense, the offender caused or threatened to cause physical harm to a person. It is undisputed that Bray shot Leon Howard and shot and killed Lewis during the commission of the offenses of having a weapon while under disability and illegal possession of a firearm in a liquor permit premises, both felonies of the third degree. As we recently stated in *State v. Ramey*, Clark App. No. 2007 CA 130, 2009-Ohio-425, "[f]or the purposes of sentencing, a trial court is entitled to take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted." Because Bray caused physical harm to Lewis and Howard during the commission of the third degree weapons offenses for which he was convicted, the trial court properly notified Bray that he was subject to a mandatory three year period of post-release control.

{¶ 35} Bray's second assignment of error is overruled.

IV

{¶ 36} Bray's third assignment of error is as follows:

{¶ 37} "APPELLANT'S CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE TO PROVE GUILT BEYOND A REASONABLE DOUBT."

{¶ 38} In his third assignment, Bray argues that insufficient evidence was adduced at trial to support his convictions for the weapons offenses beyond a reasonable doubt.

{¶ 39} If the evidence that supports a material element of an offense is insufficient, the defendant must be acquitted of that offense. In reviewing a claim of insufficient evidence, the relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime proven beyond a reasonable doubt. *State v. Britton*, 181 Ohio App.3d 415, 2009-Ohio-1282.

{¶ 40} Bray argues that because no firearm was ever recovered from himself, Lewis, nor Upshaw, his conviction for tampering with evidence is not supported by sufficient evidence. Bray testified that after the shooting, he retrieved two live .38 caliber shells from the area where the struggle occurred. Bray further testified that he could not locate the handgun after it discharged during the struggle, nor did he remove it from the scene. Bray contends that the only evidence of tampering is the absence of the handgun from the scene of the shooting.

{¶ 41} R.C. 2921.12(A)(1) describes the offense of tampering with evidence as follows:

{¶ 42} "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

{¶ 43} "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation ***."

{¶ 44} In *State v. Spears*, 178 Ohio App.3d 580, 2008-Ohio-5181, we held that because there was no properly admissible evidence to support the inference that the defendant tampered with evidence by disposing of the gun, his conviction for tampering with evidence was based on insufficient evidence, and therefore, contrary to law. In the instant case, Bray's conviction for tampering with evidence was supported by sufficient evidence, in addition to the mere absence of the handgun from the scene of the shooting. Howard

testified that after going outside after he had been shot, he heard two gunshots fired by an individual he believed to be Bray. Richard Howard, another member of the club testified that he encountered Bray outside after the shooting carrying a "balled up shirt" with both hands, the inference being that Bray had wrapped up the handgun in the shirt. Moreover, Bray testified that he removed two live .38 caliber shells from the scene which were in his handgun before the struggle with Lewis began. Accordingly, sufficient evidence was adduced at trial which supported Bray's conviction for tampering with evidence.

{¶ 45} Bray asserts that since he was acquitted of all the murder and felonious assault charges, the doctrine of collateral estoppel precluded the State from using any facts, evidence, or testimony related to the charges of which he was acquitted to support any of the weapons charges. Thus, in the absence of any testimony concerning his possession of a handgun, Bray argues that the State's remaining evidence in support of the weapons charges are insufficient as a matter of law. In support of his argument, Bray relies on *Ashe v. Swenson* (1970), 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, in which the defendant was charged with armed robbery at a poker game. At trial, however, none of the State's witnesses were able to positively identify the defendant as one of the culprits, and he was acquitted due to insufficient evidence. Id. Since the defendant was acquitted, the Fifth Amendment guarantee against double jeopardy precluded the State from attempting to prosecute him a second time for the same offense. Id. at 445, 446. *Ashe* has no application to the instant case.

{¶ 46} Bray's offenses of carrying a concealed weapon and illegal possession of a firearm in a liquor permit premises had not been determined by a valid, final judgment, nor

had they been litigated between the same parties in a prior lawsuit. Neither the doctrine of collateral estoppel nor the Fifth Amendment guarantee against double jeopardy were implicated, and the testimony adduced at trial regarding Bray's possession of the handgun was admissible in support of the weapons charges against him. Bray's acquittal for the murder and assault charges had no affect on the admissibility of the State's evidence establishing that he was carrying a handgun on the night of the shooting. Significantly, all weapon offenses had been completed before Bray acted in self defense.

{¶ 47} Bray's third assignment of error is overruled.

V

{¶ 48} Bray's fourth assignment of error is as follows:

{¶ 49} "THE INDICTMENT CHARGING THE APPELLANT IS DEFECTIVE DUE TO A LACK OF COMPLIANCE WITH CRIMINAL RULE 6(C) AND (F)."

{¶ 50} In Bray's fourth assignment, he contends that the indictment is defective because it does not comply with the requirements of Crim. R. 6(C) and (F). Specifically, Bray asserts that the indictment is defective because the signature page lists only five of the nine counts for which Bray was indicted, and the remaining pages of the indictment are not signed by the jury foreperson.

{¶ 51} Crim. R. 6(C), which outlines the duties of a grand-jury foreperson, grants the foreperson "the power to administer oaths and affirmations" and requires the foreperson to "sign all indictments;" to keep, or to designate another grand juror to "keep a record of the number of jurors concurring in the finding of every indictment[,] and upon the return of the indictment[,] [to] file the record with the clerk of court ***." We also note that R.C.

2939.20 requires the grand jury foreperson to sign the indictment, as well as indorse the indictment with the words "A True Bill."

{¶ 52} Crim. R. 6(F) states in pertinent part:

{¶ 53} "An indictment may be found only upon the concurrence of seven or more jurors. When so found the foreman or deputy foreman *shall sign the indictment as foreman or deputy foreman*."

{¶ 54} "A multiple-count indictment containing the words 'a true bill' and signed by the foreperson of the grand jury is sufficient when the entire indictment is provided to the defendant, notwithstanding that each count of the indictment is not separately signed by the foreperson." *State v. Ballow* (July 3, 1996), Medina App. No. 2527-M. There is no requirement in the Criminal Rules or the Revised Code that the grand jury foreperson sign every page and/or count in a multiple count indictment. In the instant case, Bray's indictment was signed by the grand jury foreperson and contains the words "a true bill." Bray does not assert that he was not provided a copy the indictment, and at his arraignment, he waived the reading of the indictment. Accordingly, Bray's indictment is not defective and does not warrant reversal of his convictions.

VI

{¶ 55} Bray's fifth and final assignment of error is as follows:

{¶ 56} "APPELLANT WAS PREJUDICED BY THE DENIAL OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

{¶ 57} In his final assignment, Bray argues that he was afforded ineffective assistance when his counsel advised him to plead no contest to the charge of having a weapon while under disability.

{¶ 58} "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, * * * . Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). *State v. Mitchell*, Montgomery App. No. 21957, 2008-Ohio-493, ¶ 31.

{¶ 59} An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown* (1988), 38 Ohio St.3d 305, 319. The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052. A reviewing court may not second-guess decisions of counsel which can be considered matters

of trial strategy. *State v. Smith* (1985), 17 Ohio St.3d 98. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook* (1992), 65 Ohio St.3d 516, 524.

{¶ 60} In the instant case, the crux of Bray's argument regarding his claim for ineffective assistance revolves around the tactical decision made by his counsel prior to trial when he advised Bray to plead no contest to the weapons under disability charge. Tactical decisions and trial strategy cannot form the basis of a claim for ineffective assistance. We note that had Bray allowed the weapon under disability charge to go to trial, the fact of Bray's prior conviction which formed the basis of the disability charge would have been admissible at trial. It is not unreasonable to conclude that Bray's counsel advised him to plead in order to keep the prior conviction from the jury. Bray has failed to establish that he was prejudiced by his counsel's advice. "Reviewing courts must indulge in a strong presumption that counsel's conduct was not improper, and reject post-trial scrutiny of an act or omission that was a matter of trial tactics merely because it failed to avoid a conviction." *State v. Reid*, Montgomery App. No. 23409, 2010-Ohio-1686.

{¶ 61} Bray's final assignment of error is overruled.

VII

{¶ 62} All of Bray's assignments having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

Copies mailed to:

Andrew R. Picek
Charles M. Blue
Hon. Richard J. O'Neill