# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 97877

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CRAIG A. COWAN

DEFENDANT-APPELLANT

### JUDGMENT:
### CONVICTIONS AFFIRMED;
### SENTENCE VACATED IN PART;
### REMANDED FOR RESENTENCING

Criminal Appeal from the
Cuyahoga County Court of Common Pleas

Case No. CR-550536

**BEFORE:** Jones, P.J., Cooney, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 6, 2012

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114

**FOR APPELLANT**

Craig A. Cowan
Inmate No. 622-034
Trumbull Correctional Institution
5701 Burnett Road
Leavittsburg, Ohio 44430

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Brad S. Meyer
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant, Craig A. Cowan ("Cowan"), appeals his convictions for felonious assault, discharge of a firearm on or near a prohibited premises, having weapons while under disability, and improperly handling firearms in a motor vehicle. His attorney filed five assignments of error, and Cowan filed three pro se assignments of error for our review.[1] For the following reasons, we affirm Cowan's convictions but vacate his sentence in part and remand for further proceedings.

{¶2} The Cuyahoga County Grand Jury indicted Cowan on nine counts: three counts of felonious assault, three counts of kidnapping with firearm specifications, notice of prior conviction, and repeat violent offender specifications attached, and one count each of having a weapon while under disability, improperly handling a firearm in a motor vehicle, and discharge of a firearm on or near a prohibited premises. Cowan agreed to bifurcate and try to the bench the notice of prior conviction, repeat violent offender specifications, forfeitures, and the charges for improperly handling a firearm in a motor vehicle, and having a weapon while under disability.

{¶3} Cowan filed a motion to suppress; after conducting a hearing, the trial court denied the motion and the matter proceeded to a jury trial.

{¶4} Toni Walcott testified that on the afternoon of May 19, 2011, she,

---

[1]*See* appendix.

her brother Robert, her cousin Artemus Blandling, her aunt Kim Blandling, Robert's girlfriend Celena Glover, Celena's cousin Albert Glover,[2] and Cowan were socializing and drinking. They first convened at Cowan's home and then at Kim's home. At some point that evening, they decided to go to a bar on Miles Avenue.

{¶5} They drove in two cars because they could not all fit in one. Celena drove Robert and Albert, and Cowan drove Toni, Artemus, and Kim. According to Toni, Cowan got into an argument with Kim causing Artemus to tell Cowan he did not like how he was talking to his mother. Cowan stopped the vehicle and reached under his seat, which caused them all to think he had a gun. Instead, he got out of the car, as did the others. He then pulled a gun out of the trunk and held it to Artemus's head. Toni was able to talk Cowan out of harming Artemus. Cowan then sat in the car and shot two times into the ground. He then left.

{¶6} Toni called Celena, who came to pick up the stranded passengers. At that point, Toni told her brother that Cowan had her laptop at his house. She attempted to call Cowan to ask for permission to retrieve the computer, but Cowan hung up on her. Her brother then called him and told him they were on their way to pick up the computer.

{¶7} Because of the earlier altercation with Artemus, Celena parked

_____

[2]The witnesses will be referred to by their first names to prevent confusion due to shared surnames.

the car down the street, and Toni and Robert walked the rest of the way to Cowan's house. As they reached his house, Cowan jumped out from behind a tree with two guns drawn. According to Robert, Cowan ordered them to "lay it down," an expression used when robbing someone. Robert said Cowan was four to five feet away from him. He grabbed Cowan's hand and twisted it and at the same time the gun went off. Robert and Toni ran in different directions while Cowan continued to shoot at them. According to Celena, he also started shooting at her car, causing her to drive in reverse to get away. Celena later located Toni running in the street. Toni then used Celena's cell phone to call police.

{¶8} Darrell Gunter lived next to Cowan. He stated that at around 10:30 p.m. he heard someone loudly say, "I'm going to get you mother f—er." He then heard gunshots. He looked out the window and saw a man wearing the same clothes the other witnesses had described Cowan wearing, firing a gun. He could not see who he was shooting at, but claimed he shot about three rounds. Gunter called 911.

{¶9} Officer Vasile Nan testified that he and his partner received a call about shots being fired in the area of East 142nd and Kinsman Road. As they were canvassing the area to locate the vehicle described in that shooting, they received a call regarding a shooting at East 139th Street. As they approached the scene, they saw Toni waving her hands frantically, crying, and yelling.

She told them her brother had been shot down the road and gave Cowan's name as the shooter, a description of his car, and his address. Because the car matched the description of the car from the earlier shooting, the officer realized the shootings were related.

{¶10} The officers proceeded to Cowan's house, which was a two-family duplex. The door of the downstairs unit was open. The residents living there verified that Cowan lived upstairs. The officers then went upstairs where they found Cowan's apartment door open but Cowan was not present.

{¶11} The next morning, Officer Terrance Smith located Cowan's vehicle near Cowan's residence and notified his supervisor. When back-up arrived, two officers went upstairs to Cowan's apartment and knocked loudly and announced "police." They received no response; therefore, the SWAT unit was called. As the SWAT unit and Cleveland police set up a perimeter around the house, one of the SWAT officers who was standing near an abandoned house next to Cowan's house discovered two weapons near a tree, a 9 millimeter and a revolver.

{¶12} A SWAT officer, using the PA system from the SWAT mobile, announced several times "Cleveland Police SWAT Unit" and requested that "Craig Cowan" come out. Cowan eventually exited the home on his own with his arms up. He kneeled on the driveway as directed and was handcuffed by SWAT officers. As he was being escorted to the zone car he stated, "What's

the big deal? I didn't hit anybody." One of the arresting officers read Cowan his *Miranda* rights and inquired if he had any more weapons. According to the officer, Cowan turned and looked toward the tree where the weapons were recovered and said, "no that was it."

{¶13} Prior to the jury deliberation, the state dismissed one count of felonious assault and two counts of kidnapping. The jury found Cowan guilty of one count of felonious assault against Robert along with the one- and three-year firearm specifications, notice of prior convictions, repeat violent offender and forfeiture specifications, and one count of discharging a firearm near or on a prohibited premises, along with the firearm specification. The jury found him not guilty of one count of felonious assault and one count of kidnapping. At a separate hearing, the trial court found Cowan guilty of having a weapon while under disability and improperly handling firearms in a motor vehicle, along with the forfeiture specification. The trial court sentenced Cowan to a total of 18 years in prison.

## Search Warrant

{¶14} In his first assignment of error, Cowan argues the trial court erred by denying his motion to suppress. Specifically, he argues the police needed a warrant to search his home because none of the exceptions to a warrantless search existed. As a result, he argues that because he was illegally arrested, his statements to police should be suppressed.

**{¶15}** Appellate review of the denial of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Carter*, 72 Ohio St.3d 545, 552, 1995-Ohio-104, 651 N.E.2d 965; *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).

**{¶16}** Consequently, when reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8. However, an appellate court reviews de novo whether the trial court's conclusions of law, based on those findings of fact, are correct. *State v. Anderson*, 100 Ohio App.3d 688, 691, 654 N.E.2d 1034 (4th Dist.1995).

**{¶17}** "[A] search conducted without a warrant issued upon probable cause is per se unreasonable [and is] subject only to a few specifically established and well-delineated exceptions." *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988), citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). If a search or seizure is found to be unreasonable, the evidence derived from the unreasonable search or seizure is subject to exclusion. *Mapp v. Ohio*, 367 U.S.

643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

{¶18} The Ohio Supreme Court has determined that there are "four exceptions to the warrant requirement which justify a warrantless search of a home: (1) an emergency situation, (2) search incident to an arrest, (3) 'hot pursuit' and (4) easily destroyed or removed evidence. *State v. Cheers* (1992), 79 Ohio App.3d 322, 325, 607 N.E.2d 115." *State v. King*, 8th Dist. No. 80573, 2003-Ohio-1143, ¶ 16.

{¶19} A review of the evidence submitted at the suppression hearing indicates that the only warrantless entry by police into Cowan's apartment occurred minutes after Cowan shot at multiple individuals. The police testified they received the call of the shots being fired at 10:40 p.m. and because they were less than a mile away, arrived by 10:43 p.m. Thus, their entry into the apartment could fall under the existence of an emergency situation because they were searching for an armed person who had just shot at several individuals. Moreover, because no evidence was recovered from the apartment at this time, the entry into the apartment was harmless error. Officers did state that they saw in plain view a box of gun shells on Cowan's dresser, but this evidence was not admitted at trial.

{¶20} Cowan's statement to police, "What's the big deal? I didn't hit anyone" was made the next day after he voluntarily exited the house at the SWAT team's request. The officers did not have an arrest warrant;

therefore, Cowan contends the trial court should have suppressed this statement. An arrest without a warrant is constitutionally invalid unless the arresting officer had probable cause to make the arrest. The test for probable cause to justify an arrest is

> whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.

*Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1991). Probable cause requires more than a generalized suspicion of criminal conduct, although less certainty than proof beyond a reasonable doubt. *State v. Watson*, 8th Dist. No. 67396, 1995 Ohio App. LEXIS 1724 (Apr. 27, 1995). Probable cause must exist at the time of the arrest; it cannot be established later by evidence gathered from the suspect after his illegal arrest. *Beck*.

{¶21} Here, the totality of the facts and circumstances were sufficient for the officers to believe that Cowan had committed an offense. Toni and Robert Walcott had told the officers that Cowan had threatened their cousin with a gun and had shot at them outside of his home. Therefore, probable cause supported his arrest.

{¶22} Cowan's statement, "What's the big deal? I didn't hit anybody" was also made prior to any question being posed to him. He was being escorted to the zone car when he made the statement. Therefore, the

statement was uncoerced and voluntarily given. After he was read his *Miranda* rights, the officers asked if he had any other weapons. It was at that point that Cowan looked toward the area under the trees and said, "No, that's it." Thus, the statements made by Cowan were properly deemed admissible by the trial court judge. Accordingly, Cowan's first assigned error is overruled.

## Insufficient Evidence

{¶23} We will address Cowan's second and third assignments of error together. Cowan argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶24} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and a sufficiency of the evidence review require the same analysis. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. In analyzing whether a conviction is supported by sufficient evidence, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶25} Cowan contends that his convictions were not supported by sufficient evidence because there was no evidence that the guns were his. The guns were discovered next to Cowan's property by a tree. No one lived in the house by the tree. When the officer asked Cowan if he had any other weapons, Cowan looked towards the tree and replied, "No, that was it" indicating that he was aware of where he had last placed the guns. Moreover, Robert identified the guns at trial as the ones that Cowan was pointing at him from a short distance of four to five feet. Therefore, sufficient evidence was presented that the guns discovered were Cowan's.

{¶26} Cowan also argues that his convictions were not supported by sufficient evidence because the guns were not test-fired to show that they were in fact operable. It is not necessary for a gun to be test-fired to prove that it is operable. The Ohio Supreme Court has held that "proof of operability can be established beyond a reasonable doubt by testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." *State v. Murphy*, 49 Ohio St.3d 206, 551 N.E.2d 932 (1990), syllabus. Moreover, whether a firearm was operable or capable of being readily rendered operable at the time of the offense is determined within the context of "all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." *State v. Thompkins*, 78 Ohio St.3d 380,

387, 1997-Ohio-52, 678 N.E.2d 541, at paragraph one of the syllabus; *State v. Crawford*, 8th Dist. No. 82833, 2004-Ohio-500.

{¶27} We conclude the totality of the circumstances provided proof the guns were operable. Celena, Toni, and Robert all testified that Cowan shot at Robert from close range. In fact, Robert saw a flash from one of the guns as it fired. Additionally, Cowan's neighbor testified that he heard gunshots and when he looked outside, he saw Cowan shooting at someone down the street.

{¶28} Cowan argues his conviction for having a weapon while under disability was not supported by sufficient evidence because no evidence of his prior conviction for voluntary manslaughter was presented. However, Cowan stipulated to his prior conviction, and a certified copy of Cowan's sentencing entry from the prior crime was admitted into evidence.

{¶29} Cowan also argues his convictions were against the manifest weight of the evidence. The concept of manifest weight of the evidence differs from that of sufficiency of the evidence. Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. *Thompkins* at 387. The Ohio Supreme Court has explained the standard to be applied to determine whether a criminal conviction is against the manifest weight of the evidence as follows: "When a court of appeals reverses a judgment of a trial court on the basis that the

verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶30} To determine whether a case is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). An appellate court should reverse the conviction and order a new trial only if it concludes that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice. *Thompkins*.

{¶31} Cowan argues that because the witnesses were admittedly intoxicated their testimony was not credible. However, the resolution of issues of credibility is a matter primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The jury was well aware that the witnesses had been drinking, but chose to believe their testimony. Moreover, Cowan's neighbor testified that he observed a man on the street in front of his home, with the same build as Cowan and dressed in the same attire as described by the other witnesses, shooting a gun several times. The neighbor, who was not intoxicated, gave

testimony that corroborated that of the other witnesses. Therefore, we cannot conclude the jury lost its way in finding Cowan guilty. Accordingly, Cowan's second and third assignment of errors are overruled.

## Allied Offenses

{¶32} In his fourth assignment of error, Cowan argues the trial court erred by not merging the offenses, which he claims were allied offenses. He contends the felonious assault, having a weapon while under disability, improper handling of a firearm in a motor vehicle, and discharge of a firearm near a prohibited premises, were committed with one animus and should have merged.

{¶33} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 43, the Ohio Supreme Court stated that the purpose of merging allied offenses as follows:

[It has been] consistently recognized that the purpose of R.C. 2941.25 is to prevent shotgun convictions, that is, multiple findings of guilt and corresponding punishments heaped on a defendant for closely related offenses arising from the same occurrence. [*Maumee v.*] *Geiger*, 45 Ohio St. 2d at 242, 344 N.E.2d 133. This is a broad purpose and ought not to be watered down with artificial and academic equivocation regarding the similarities of the crimes. When "in substance and effect but one

offense has been committed," the defendant may be convicted of only one offense. [*State v.*] *Botta*, 27 Ohio St.2d at 203, 271 N.E.2d 776.

{¶34} With this purpose in mind, the *Johnson* court established a new two-part test for determining whether offenses are allied offenses of similar import under R.C. 2941.25. In so doing, the supreme court expressly overruled *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, which required a "comparison of the statutory elements in the abstract" to determine whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other. The *Johnson* court held that rather than compare the elements of the crimes in the abstract, courts must consider the defendant's conduct.

{¶35} Under *Johnson*, the first inquiry focuses on "whether it is possible to commit one offense and commit the other with the same conduct * * *." *Id*. at ¶ 48. It is not necessary that the commission of one offense will always result in the commission of the other. *Id*. Rather, the question is whether it is possible for both offenses to be committed by the same conduct. *Id*. Conversely, if the commission of one offense will never result in the commission of the other, the offenses will not merge. *Id*. at ¶ 51.

{¶36} If the multiple offenses can be committed with the same conduct, the court must then determine whether the offenses were in fact committed by a single act, or performed with a single state of mind. *Johnson* at ¶ 49. If the answer to both questions is yes, the offenses are allied offenses of similar import and must be merged. *Id.* at ¶ 50. On the other hand, if the offenses are committed separately or with a separate animus, the offenses will not merge. *Id*. at ¶ 51.

{¶37} We conclude that there was a separate animus for each offense; therefore, the offenses do not merge. Under R.C. 2941.25(B), "animus" is defined as "purpose or, more properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). If the defendant acted with the same purpose, intent, or motive, the animus is identical for the offenses. *State v. Lewis*, 12th Dist. No. CA2008-10-045, 2012-Ohio-885, ¶ 13. Here, Cowan's actions occurred during different times.

{¶38} The felonious assault conviction was the result of Cowan

shooting at Robert. However, the improper handling of a firearm in a motor vehicle and discharge of a firearm on or near a prohibited premises occurred approximately one hour before. The improper handling of a firearm concerned Cowan's driving away with a loaded revolver after stranding his passengers. The discharge of a firearm concerned Cowan shooting his gun twice at the ground while sitting in the vehicle, after threatening Artemus. Therefore, these offenses each involved a separate animus and could not result in the commission of each other under these factual circumstances.

{¶39} We also conclude that the animus of having a weapon under disability is making a conscious choice to possess a weapon. Here, Cowan necessarily acquired the guns sometime prior to committing the other crimes. The fact that he then used the weapons to commit the other crimes does not absolve Cowan of the criminal liability that arises solely from his decision to illegally possess the weapons. *See State v. Jones*, 1st Dist. No. C-110059, 2011-Ohio-6633; *State v. Dillingham*, 12th Dist. No. CA2011-03-043, 2011-Ohio-6348; *State v. Bray*, 2d Dist. No. 2010 CA 14, 2011-Ohio-4660. Accordingly, Cowan's fourth assignment of error is overruled.

### Consecutive Sentence Findings

{¶40} In his fifth assignment of error, Cowan argues the trial court did not make the appropriate findings in support of consecutive sentences as required by H.B. 86.

{¶41} The General Assembly recently amended former R.C.

2929.14(E)(4), renumbered R.C. 2929.14(C)(4), and enacted new language requiring fact-finding for consecutive sentences. Am.Sub.H.B. No. 86. Because Cowan was sentenced after the statute took effect, the trial court was required to sentence him according to the revisions implemented in H.B. 86.

{¶42} R.C. 2929.14(C)(4), as revised, now requires that a trial court engage in a three-step analysis in order to impose consecutive sentences. First, the trial court must find that a "consecutive sentence is necessary to protect the public from future crime or to punish the offender." *Id*. Next, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id*. Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id*.

{¶43} In each step of this analysis, the statutory language directs that

the trial court must "find" the relevant sentencing factors before imposing consecutive sentences. R.C. 2929.14(C)(4). In making these findings, a trial court is not required to use "talismanic words to comply with the guidelines and factors for sentencing." *State v. Brewer*, 1st Dist. No. C-000148, 2000 Ohio App. LEXIS 5455 (Nov. 24, 2000). But it must be clear from the record that the trial court actually made the findings required by statute. *See State v. Pierson*, 1st Dist. No. C-970935, 1998 Ohio App. LEXIS 3812 (Aug. 21, 1998). A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. *See State v. Edmonson*, 86 Ohio St.3d 324, 326, 1999-Ohio-110, 715 N.E.2d 131.

{¶44} In the instant case, the trial court failed to articulate the appropriate findings required by R.C. 2929.14(C)(4). In fact, the court merely recited Cowan's convictions and the accompanying sentence for each offense. Accordingly, we must remand the case to the trial court to consider whether consecutive sentences are appropriate under H.B. 86, and if so, to enter the proper findings on the record. Accordingly, Cowan's fifth assigned error is sustained.

### Pro Se Assignments of Error

{¶45} Although Cowan assigned three pro se errors for our review, we will not review them because he has exceeded the ten-page limitation we set in allowing him to file the supplemental pro se assigned errors. Cowan's

brief is 21 pages long, and he does not commence his legal arguments until the 12ᵗʰ page.    Page limitations are a valid exercise of judicial power. Even in capital cases, the Ohio Supreme Court has upheld page limitations, finding that they force counsel to winnow out weaker arguments and focus on key issues.  *State v. Davis*, 62 Ohio St.3d 326, 352, 581 N.E.2d 1362, (1991), *cert. denied* (1992),   506 U.S. 803, 113 S.Ct. 302, 121 L.Ed.2d 6; *State v. Bonnell*, 61 Ohio St.3d 179, 186, 573 N.E.2d 1082 (1991), *cert. denied* (1992), 502 U.S. 1107, 112 S.Ct. 1205, 117 L.Ed.2d 444.   Accordingly, Cowan's pro se brief is stricken.

**{¶46}** Convictions affirmed; sentence affirmed in part and vacated in part; case remanded for the trial court to consider whether consecutive sentences are appropriate under H.B. 86, and if so, to enter the proper findings on the record.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

LARRY A. JONES, SR., PRESIDING JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
COLLEEN CONWAY COONEY, J., CONCURS
IN JUDGMENT ONLY

APPENDIX

**COUNSEL'S ASSIGNED ERRORS:**

I. The trial court erred when it denied appellant's motion to suppress.

II. The trial court erred in denying appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against appellant.

III. Appellant's convictions are against the manifest weight of the evidence.

IV. The trial court erred by ordering convictions and a consecutive sentence for separate counts of felonious assault and the other weapons counts because the offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same transaction under R.C. 2929.14.

V. The trial court erred by ordering appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and HB 86.

**PRO SE ASSIGNED ERRORS:**

VI. The trial court erred to the prejudice of defendant/appellant when it did not give appellant a pre-trial hearing for his motion of self-representation that was filed properly, timely, knowingly, intelligently, and voluntarily.

VII. The trial court erred to the prejudice of defendant/appellant conviction. [sic] Appellant's due process was violated when the trial court allowed the jury to deliberate with appellant's prior convictions.

VIII. The trial court erred to the prejudice of defendant/appellant conviction [sic]. Appellant contends that

the evidence was insufficient to convict him of firing weapons, felonious assault, and having weapons in his vehicle.