[Cite as *State v. Baron*, 2011-Ohio-3204.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-100474 |
| | | TRIAL NO. B-0906395 |
| Plaintiff-Appellee, | : | |
| | | *D E C I S I O N.* |
| vs. | : | |
| | | |
| CAMERON LAMAR BARON, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 30, 2011

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

SYLVIA S. HENDON, **Judge.**

{¶1}   Following a jury trial, defendant-appellant Cameron Lamar Baron[1] was found guilty of murder and two accompanying firearm specifications.  Baron separately entered a guilty plea to the offense of having a weapon while under a disability.  The trial court sentenced Baron to an aggregate term of 28 years' to life imprisonment.

{¶2}   Baron now appeals, raising five assignments of error for our review. He argues that his murder conviction was not supported by sufficient evidence and was against the manifest weight of the evidence, that he received ineffective assistance from his trial counsel, that the trial court erred in imposing consecutive sentences because Baron had committed each offense with the same animus, and that the sentence imposed denied him due process of law and constituted a cruel and unusual punishment.  Finding no merit to Baron's assignments of error, we affirm the judgment of the trial court.

### Factual Background

{¶3}   On September 5, 2009, at approximately 2:00 a.m., Baron shot Rico Rutherford.  Just prior to the shooting, Rutherford and his companion, Krista Gamble, had exited from a vehicle onto a street in Lincoln Heights.  Baron nearly struck Gamble as he drove down the same street.  Gamble shouted something at Baron's car as he drove past her.  Baron then backed his car down the street to Gamble and Rutherford.  Baron never exited from his vehicle, but he verbally sparred through his car window with Rutherford, who stood outside Baron's vehicle.  During

---

[1] Baron's name also appears in the record as Barron.

the verbal confrontation, Baron placed a gun on the window of the car and fired at Rutherford approximately four or five times. Rutherford died from related injuries. Baron fled the scene, and was apprehended several weeks later.

{¶4} At trial, Baron argued that he had shot Rutherford in self-defense. According to Baron, Rutherford first insinuated that he had a gun, and then later lifted his shirt to reach for a weapon that had been on his hip. As Rutherford removed his weapon, Baron shot him. Christopher Walker, a passenger in Baron's car at the time of the shooting, also testified that Rutherford had reached for a gun near his waistband. But Walker stated that Rutherford had been unable to fully remove the gun before being shot by Baron.

### Sufficiency and Weight of the Evidence

{¶5} In his first two assignments of error, Baron argues that his murder conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶6} When reviewing the sufficiency of the evidence, this court must view all probative evidence and reasonable inferences in the light most favorable to the prosecution to determine whether any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt.[2] In contrast, when reviewing the weight of the evidence, this court must independently weigh the evidence and consider the credibility of the witnesses to determine whether the trier of fact lost its way and created a manifest miscarriage of justice in convicting the defendant.[3]

---

[2] *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
[3] *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

{¶7} Baron was convicted of murder under R.C. 2903.02(A). This statute states that "[n]o person shall purposely cause the death of another or the unlawful termination of another's pregnancy." Baron specifically argues that the state failed to prove that he had acted purposely. One acts purposely when "it is his specific intention to cause a certain result."[4] Following our review of the record, we conclude that the state sufficiently established the elements of murder, including that Baron had purposely caused the death of Rutherford.

{¶8} Krista Gamble testified that Baron fired at Rutherford approximately four or five times at close range during a verbal altercation. Baron's repeated firing of his weapon during a non-violent confrontation at such a close range clearly demonstrates that he acted with purpose. Baron's murder conviction was supported by sufficient evidence.

{¶9} Baron further argues that he had sufficiently proven self-defense by a preponderance of the evidence. To successfully rely on the affirmative defense of self-defense, a defendant must establish that he was not at fault in creating the violent situation, that the defendant had a legitimate belief that he was in danger of imminent death or great bodily harm and that the only means of escape was through the use of force, and that the defendant did not violate any duty to retreat or avoid the danger.[5]

{¶10} In this case, Baron failed to establish that he was not at fault in creating the violent situation. The record indicates that Baron nearly struck Gamble with his vehicle as she stood in the street. Gamble then yelled something at Baron as he drove away. But rather than continuing to drive down the street and avoid a

---

[4] R.C. 2901.22(A).
[5] *State v. Thomas*, 77 Ohio St.3d 323, 326, 1997-Ohio-269, 673 N.E.2d 1339.

4

confrontation, Baron elected to back down the street towards Gamble and Rutherford.

{¶11} We further find that the record did not establish that Baron had a legitimate belief that he was in danger of imminent death or great bodily harm. Baron and his passenger, Christopher Walker, both testified that they had viewed a weapon on Rutherford's waist. But Walker further testified that Rutherford had not removed the weapon from his waistband at the time that he was shot. In contradiction to Baron and Walker's testimony, Krista Gamble testified that Rutherford had been unarmed on the evening of the shooting. Both George Williams and Yolanda Williams, who had spent the evening prior to the shooting with Gamble and Rutherford, corroborated Gamble's testimony that Rutherford had been unarmed. And no weapon was found on Rutherford's person or near the area where the shooting had taken place.

{¶12} The jury was in the best position to judge the credibility of the witnesses. It was entitled to reject Baron's testimony and find that offered by the state's witnesses to be more credible. We cannot find that the jury lost its way and committed a manifest miscarriage of justice in rejecting Baron's theory of self-defense and in finding him guilty of murder. Baron's conviction for murder was not against the manifest weight of the evidence.

{¶13} The first and second assignments of error are overruled.

### Ineffective Assistance

{¶14} In his third assignment of error, Baron argues that he received ineffective assistance from his trial counsel. In order for counsel's performance to be deemed ineffective, counsel's performance must have been deficient and the

defendant must have been prejudiced by the deficient performance.[6]  To establish prejudice, a defendant must show that, but for counsel's performance, the outcome of the proceedings would have been different.[7]

{¶15}  Baron specifically argues that his counsel was ineffective for failing to renew his Crim.R. 29 motion for an acquittal at the close of trial.  But here, we have already found that Baron's murder conviction was supported by sufficient evidence.  Consequently, Baron was in no manner prejudiced by counsel's failure to renew the motion for an acquittal.  The third assignment of error is overruled.

### *Sentencing*

{¶16}  In his fourth assignment of error, Baron argues that the trial court erred in imposing consecutive sentences on the two firearm specifications and on the offenses of murder and having a weapon while under a disability.  Baron contends that these offenses were not separately punishable because he committed each offense with the same animus.

{¶17}  Under R.C. 2941.25, Ohio's multiple-count statute, a trial court may convict and sentence a defendant for two or more offenses " 'having as their genesis the same criminal conduct or transaction,' " if the offenses (1) were not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense.[8]  The Ohio Supreme Court has recently

---

[6] *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052.
[7] Id. at 694.
[8] *State v. Bickerstaff* (1984), 10 Ohio St.3d 62, 65-66, 461 N.E.2d 892, quoting *State v. Moss* (1982), 69 Ohio St.2d 515, 519, 433 N.E.2d 181.  See, also, *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶51, and *State v. Evans*, 1st Dist. No. C-100028, 2011-Ohio-2356.

clarified that, when determining whether two offenses are allied offenses of similar import under R.C. 2941.25, the conduct of the accused must be considered.[9]

{¶18}  We first address Baron's argument with respect to the offenses of murder and having a weapon while under a disability.  We have already defined the offense of murder.  The offense of having a weapon while under a disability is governed by R.C. 2923.13, which states in relevant part that "[u]nless relieved from a disability * * * no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense of violence."[10]

{¶19}  In this case, we find that Baron committed the offenses of murder and having a weapon while under a disability both separately and with a separate animus.  The offense of having a weapon while under a disability was complete upon Baron's initial possession of a firearm.  This occurred significantly prior to the murder.  Much later, Baron chose to remove the firearm from his person and purposely fire it repeatedly at Rutherford.  Given the separate animus and separate conduct used to commit these offenses, we find that they were separately punishable under R.C. 2941.25, and that the trial court did not err in imposing consecutive sentences.

{¶20}  We next consider Baron's argument that the trial court erred in ordering his sentences on the two firearm specifications to be served consecutively.  The jury found Baron guilty of two firearm specifications.  The first specification provided that Baron "did have on or about his person, or under his control, a firearm while committing the offense of Murder and displayed the firearm, brandished the

---

[9] *State v. Johnson*, supra, syllabus.
[10] R.C. 2923.13(A)(2).

firearm, indicated that he possessed a firearm or used it to facilitate murder * * *." The second firearm specification provided that Baron "did while committing Murder * ** discharge a firearm from a motor vehicle."

{¶21} The protections against multiple punishments found in R.C. 2941.25 do not apply to firearm specifications. In *State v. Ford*, the Ohio Supreme Court found that the offense of discharging a firearm at or into a habitation and an accompanying firearm specification were not allied offenses of similar import.[11] The court first held that a firearm specification was not an "offense" as contemplated by R.C. 2941.25, but rather was a sentencing enhancement.[12] And because R.C. 2941.25 requires the merger of two or more "offenses," the court held that discharging a firearm at or into a habitation and an accompanying specification were not subject to merger.[13]

{¶22} Because R.C. 2941.25 concerns the merger of two or more offenses, Baron cannot rely on it to argue that the sentences imposed for the firearm specifications, which are sentencing enhancements, must merge.

{¶23} Moreover, the legislature has clearly indicated that the trial court must impose sentence for each of these specifications and that the sentences imposed for these specifications must be served consecutively. R.C. 2929.14(D)(1)(c) provides that, if a trial court imposes sentence on a offender for the specification concerning discharging a firearm from a motor vehicle, then "the court also shall impose a prison term under division (D)(1)(a) of this section relative to the same offense,

---

[11] 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, paragraph one of the syllabus.
[12] Id. at ¶17.
[13] Id. at ¶19.

provided the criteria specified in that division for imposing an additional prison term are satisfied relative to the offender and the offense."

{¶24} Further, R.C. 2929.14(E)(1)(a) states in relevant part that "if a mandatory prison term is imposed upon an offender pursuant to division (D)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony, if a mandatory prison term is imposed upon an offender pursuant to division (D)(1)(c) of this section for committing a felony specified in that division by discharging a firearm from a motor vehicle, or if both types of mandatory prison terms are imposed, the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division or under division (D)(1)(d) of this section, consecutively to and prior to any prison term imposed for the underlying felony pursuant to division (A), (D)(2), or (D)(3) of this section or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender."

{¶25} Pursuant to R.C. 2929.14(E)(1)(a), the trial court properly made the sentence imposed for each firearm specification consecutive. The fourth assignment of error is overruled.

{¶26} In his fifth assignment of error, Baron asserts that the sentence imposed denied him due process of law and constituted a cruel and unusual punishment.

{¶27} For the offense of murder, the trial court imposed a sentence of 15 years' to life imprisonment. The trial court then imposed three years and five years, respectively, for each firearm specification. Each of these terms of imprisonment

were made consecutive to each other and to the sentence imposed for the offense of murder. The trial court further imposed a consecutive term of five years' imprisonment for the offense of having a weapon while under a disability, resulting in an aggregate term of 28 years' to life incarceration.

{¶28} We undertake a two-step process with respect to review of sentences.[14] First, we must determine whether the sentences imposed were clearly and convincingly contrary to law.[15] Here, all sentences imposed fell within the available statutory ranges and were not contrary to law. Next, we must determine whether the trial court abused its discretion in the imposition of sentence.[16] Baron fired at Rutherford numerous times at close range from inside his vehicle. At the time, Baron was prohibited by law from possessing a weapon. Baron then fled the scene. Under these circumstances, we cannot find that the trial court committed an abuse of discretion when imposing sentence.

{¶29} Baron was not denied due process of law and was not subject to a cruel and unusual punishment. The fifth assignment of error is overruled.

{¶30} Having overruled Baron's assignments of error, we accordingly affirm the judgment of the trial court.

Judgment affirmed.

SUNDERMANN, P.J., and FISCHER, J., concur.

Please Note:

The court has recorded its own entry on the date of the release of this decision.

---

[14] See *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.
[15] Id. at ¶14.
[16] Id. at ¶17.