[Cite as *State v. Jones*, 2011-Ohio-6633.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110059 |
| | | TRIAL NO. B-0902585 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| JERRY JONES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 23, 2011

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Farrish Law Firm* and *Michaela M. Stagnaro*, for Defendant-Appellant.

Please note: This case has been removed from the accelerated calendar.

**SYLVIA S. HENDON, Judge.**

{¶1}     Following a jury trial, defendant-appellant Jerry Jones was found guilty of murder under R.C. 2903.02(A) and an accompanying weapon specification. At the close of the trial, the trial court separately found Jones guilty of the offense of having a weapon while under a disability, under R.C. 2923.13(A)(3).  The trial court imposed an aggregate sentence of 25 years' to life imprisonment.

{¶2}     Jones appeals, raising five assignments of error for our review.  We find no merit to Jones' assignments of error, and we affirm the judgment of the trial court.

### *Statement of Facts*

{¶3}     On December 31, 2002, Gregory Beauchamp was shot as he stood downtown at the corner of Vine and Liberty streets with friends.  Joshua Bumpus, an acquaintance of Beauchamp's who had witnessed the murder, testified that he, Beauchamp, and several others had been downtown standing around talking, when a car full of people drove past.  The car's occupants started shouting the word "fags" at Bumpus and Beauchamp, who were homosexuals, and someone in the car threw a can of "pop" out of a window.  Beauchamp began to throw the "pop" can back.  But the back rear passenger put his arm out of the front passenger's window and fired a gun at Beauchamp approximately three or four times.  Bumpus heard Beauchamp state that his chest hurt, and then saw his friend fall to the ground covered in blood.

{¶4}     Ade Oba had been driving the vehicle involved in the shooting.  Oba testified that, on the evening of December 31, 2002, he had been driving around with Lorenzo Hudson, Antonio Harmon, and Jones.  Jones had been seated in the rear

passenger seat of the vehicle. Oba had stopped the vehicle at a traffic light at the intersection of Vine and Liberty streets, when Hudson had thrown a Mountain Dew can out of the window at the group of people on the corner, whom Oba described as "transsexuals." Oba testified that as one of the "transsexuals" had begun to throw the can back at the car, Jones had used Hudson's weapon to fire two shots at him. After the shooting, Oba had burned the vehicle that he had been driving to prevent it from leading to his identification.

{¶5}   In addition to Bumpus and Oba, the state presented testimony from two witnesses to whom Jones had confessed his guilt in these offenses. Adrian Smith testified that he and Jones had grown up together. In 2007, Smith and Jones had been selling heroin together when, in Smith's terms, a "fag" had attempted to "score" some drugs from them. Jones had refused to sell drugs to the man; he had called the man numerous derogatory terms and had talked about his hatred of "fags." Jones then told Smith that he had "bodied" a "fag" back in 2002. Smith explained to the jury that to "body" someone meant to kill them. According to Smith, Jones had revealed that he had been driving around with Oba, Hudson, and Harmon, when a "fag" had flagged them down. Jones told Smith that he had thrown a can of "pop" at the "fag," who had then thrown the can back at the car. After the car in which Jones had been riding drove around the block, it came back to that scene and Jones had fired out of the window at the man.

{¶6}   Michael Matthews additionally testified that Jones had confessed to Beauchamp's murder while the two had been incarcerated together in the Hamilton County Justice Center. Matthews testified that, prior to their incarceration, he and Jones had "hustled" together. While in the Justice Center, Jones told Matthews that

he had been transported back to Hamilton County for charges involving the murder of a "fag" on Vine Street back in 2001. According to Matthews, Jones had admitted that he had committed the murder, and he additionally had expressed surprise that charges had been brought because the crime had occurred so many years prior.

### *Other-Acts Evidence*

{¶7} In his first assignment of error, Jones argues that the trial court erred in admitting other-acts testimony into evidence. Jones first argues that Adrian Smith's testimony that he and Jones had sold heroin together was improperly admitted. He further argues that Michael Matthews' testimony that he and Jones used to "hustle" together, as well as Matthews' testimony that Jones had been brought back to Hamilton County to stand trial for these charges, was impermissible other-acts testimony.

{¶8} Under Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Generally, we review a trial court's admission of relevant evidence for an abuse of discretion. *State v. Truitt*, 1st Dist. No. C-050188, 2011-Ohio-1885, ¶8, citing *State v. Maurer* (1984), 15 Ohio St.3d 239, 264-265, 473 N.E.2d 768. But here, Jones failed to object to this testimony during trial. Consequently, he has waived all put plain error. Crim.R. 52(B); *State v. Griffin*, 1st Dist. No. C-020084, 2003-Ohio-3196, ¶34. Plain error is an error so extreme that it affected the outcome of the proceedings and must be corrected to prevent a manifest

miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraphs two and three of the syllabus.

{¶9}   We find no error in the admission of the cited testimony from Smith and Matthews under Evid.R. 404(B).  Contrary to Jones' assertion, the testimony was not offered to show that he is a drug dealer and a violent person.  Rather, the testimony was offered to establish Jones' identity and relationship to the witnesses.

{¶10}  Smith's testimony that he and Jones had sold heroin together was relevant; Jones had admitted to Beauchamp's murder while selling drugs with Smith, and this testimony was key to establishing Jones' identity as the person who had admitted this crime.  The same holds true for Matthews' testimony.  Matthews' reference to "hustling" established that these two men had had a prior relationship, which gave credence to Matthews' testimony that Jones had confessed this crime to him.  And Matthews' brief mention that Jones had been transported from Butler County to the Hamilton County Justice Center was offered to establish how the two men had been reacquainted.  It set the stage for their later conversation, in which Jones had confessed to Beauchamp's murder.

{¶11}  The trial court properly admitted this testimony under Evid.R. 404(B). The first assignment of error is overruled.

### *Hearsay*

{¶12}  In his second assignment of error, Jones argues that the trial court erred by admitting impermissible hearsay evidence at trial.

{¶13}  During trial, Detective John Horn, a member of the Cincinnati Police Department's cold case unit, testified about his investigation of Beauchamp's murder.  With respect to this assignment of error, Jones takes issue with Horn's

testimony that Lorenzo Hudson and Antonio Harmon, two of the occupants in Jones' vehicle when Beauchamp was shot, had provided statements to him in connection with this offense. Jones argues that this statement, when considered in conjunction with Horn's testimony that he had been unable to locate Hudson and Harmon to testify at trial, was hearsay because it invited the jury to speculate that these men had placed the blame for Beauchamp's murder on Jones in their statements.

{¶14} Jones' argument is tenuous. Under Evid.R. 801(C), hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Horn's testimony that Hudson and Harmon had provided statements during the investigation was not hearsay. Horn merely stated that these men had given statements; he made no mention of the statements' contents. His testimony was offered to explain the course of his investigation, not to prove the truth of the content of these statements, which, notably, was never provided to the jury. We decline Jones' invitation to label Horn's testimony as hearsay, and we find that no error occurred in the admission of this testimony. The second assignment of error is overruled.

### Prosecutorial Misconduct

{¶15} In his third assignment of error, Jones argues that the trial court erred by permitting the prosecutor to make improper remarks to the jury and introduce improper evidence. Prosecutorial misconduct will only be grounds for reversal if it deprived the defendant of a fair trial. *State v. Truitt*, supra, at ¶13; see *State v. Jackson*, 92 Ohio St.3d 436, 443, 2001-Ohio-1266, 751 N.E.2d 946.

{¶16} Jones first argues that the prosecutor improperly questioned Detective Horn about statements obtained during his investigation from Lorenzo Hudson, Antonio Harmon, and Ade Oba. We have already found that the prosecutor's questions, along with Detective Horn's corresponding testimony, regarding statements given by Hudson and Harmon were not improper. So we now solely consider the propriety of the prosecutor's questions with respect to pretrial statements given by Ade Oba. During trial, Oba testified prior to Detective Horn. During Detective Horn's testimony, the prosecutor first established that Oba had given a pretrial statement at some point in the course of the investigation. The prosecutor then asked Detective Horn if Oba's pretrial statement had been consistent with his trial testimony. Detective Horn answered affirmatively, and counsel for Jones objected immediately. The trial court sustained the objection and instructed the jury to disregard that question and answer. Prior to the prosecutor engaging in this line of questioning, the trial court had cautioned him against bolstering the credibility of his witnesses through Detective Horn's testimony.

{¶17} This question was improper. The trial court had instructed the prosecutor to avoid bolstering the credibility of a witness through Detective Horn. But in light of the other evidence adduced at trial, this lone question did not deprive Jones of a fair trial. Further, the trial court sustained Jones' objection and instructed the jury to disregard both the question and answer. A jury is presumed to follow the trial court's curative instructions. *State v. Garner*, 74 Ohio St.3d 49, 59, 1995-Ohio-168, 656 N.E.2d 623.

{¶18} Jones next argues that the prosecutor committed misconduct during closing argument by contending that Jones should have produced a neutral witness

to verify the relationship between Jones and the prosecutor's testifying witnesses. Jones argues that this statement improperly shifted the burden of proof from the state to Jones. Generally, prosecutors are entitled to a wide degree of latitude in closing arguments. *State v. Smith* (1984), 14 Ohio St.3d 13, 470 N.E.2d 883. All statements made must be evaluated not in isolation, but rather in light of the entire closing argument. *State v. Keenan* (1993), 66 Ohio St.3d 402, 410, 613 N.E.2d 203.

{¶19} This statement by the prosecutor was not improper and has been taken out of context by Jones. During closing arguments, counsel for Jones discussed in detail the motives that Oba, Smith, and Matthews had for testifying, and he insinuated that these witnesses had lied during their testimony in return for case consideration. Defense counsel stated to the jury, "How hard—is there any other proof that they know—even know each other? How hard would it be to bring in some independent witness to say, hey, you know Jerry Jones? Yes. Do you know [Adrian Smith]? Yes. Are they best friends? Yea. If that was true, how hard would it be to get a witness to come in?" In response to these statements by defense counsel, the prosecutor stated in his rebuttal portion of closing argument "He says, well, why didn't [the prosecutor] bring in a witness, a neutral witness, that could testify that * * * they know each other. I didn't need that witness * * * Why didn't they bring in a witness to say he didn't know?"

{¶20} When viewed in the proper context, it is clear that the prosecutor was responding to defense counsel's insinuation that the state should have produced a neutral witness to verify the relationship between all these parties. The prosecutor's comment was an appropriate response. And, as noted by the trial court, defense

8

counsel "opened the door" for this statement. The prosecutor's comment was not improper, and the assignment of error is overruled.

*Sufficiency and Weight*

{¶21} In his fourth assignment of error, Jones argues that his convictions for murder and having a weapon while under a disability were not supported by sufficient evidence and were against the manifest weight of the evidence. A conviction is supported by sufficient evidence when, after viewing all evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the elements of the offenses proven beyond a reasonable doubt. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. When reviewing the manifest weight of the evidence, this court must weigh all evidence, along with reasonable inferences, and consider the credibility of the witnesses to determine if the trier of fact lost its way and created a manifest miscarriage of justice requiring reversal of the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

{¶22} Jones was convicted of murder under R.C. 2903.02(A), which provides that "[n]o person shall purposely cause the death of another." Jones was additionally found guilty of having a weapon while under a disability under R.C. 2923.13(A)(3). This statute states, in relevant part, that "[u]nless relieved from disability * * *, no person shall knowingly, acquire, have, carry, or use any firearm or dangerous ordnance if * * * the person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."

{¶23} Jones' convictions were supported by sufficient evidence. Joshua Bumpus testified that Beauchamp was shot by the person sitting in the rear passenger seat of the vehicle. Ade Oba confirmed that Jones had been seated in that position, and that Jones had shot Beauchamp. And Jones admitted his culpability to both Adrian Smith and Michael Matthews.

{¶24} We further find that Jones' convictions were not against the manifest weight of the evidence. As the triers of fact, the jury and the trial court were in the best position to judge the credibility of the witnesses. Oba had admitted during his testimony that he was currently incarcerated on federal weapons charges, and that it was a possibility that he would receive a lesser sentence as a result of his testimony in this case. Smith had testified that he was currently incarcerated in South Carolina on drug and weapon charges, and he also revealed his lengthy prior criminal history. And Matthews admitted that the prosecutor had agreed to "take up" his current charges with his attorney after his testimony. Defense counsel vigorously cross-examined the state's witnesses on these issues. The jury and trial court were aware of the witnesses' motivations and desire for case consideration, and they were able to determine what weight to give their testimony with these considerations in mind.

{¶25} Jones additionally highlights various discrepancies in the testimony of Smith and Oba to argue that they had fabricated their stories. But these discrepancies concerned minor details about the crime's execution. Smith and Oba did not waiver or differ in their testimony that Jones had been the perpetrator of these offenses. Further, the jury had the opportunity to weigh their testimony and to resolve any inconsistencies. See *State v. Hughes*, 1st Dist. No. C-030489, 2005-Ohio-2453, ¶19.

{¶26} Jones' convictions for murder and having a weapon while under a disability were supported by sufficient evidence and were not against the manifest weight of the evidence. The fourth assignment of error is overruled.

### Allied Offenses

{¶27} In his fifth assignment of error, Jones argues that the trial court erred by improperly sentencing him on both the offenses of murder and having a weapon while under a disability because the offenses were allied offenses of similar import.

{¶28} Under R.C. 2941.25, Ohio's multiple-count statute, a trial court may convict and sentence a defendant for two or more offenses that arose out of the same criminal transaction if the offenses (1) were not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense. *State v. Bickerstaff* (1984), 10 Ohio St.3d 62, 65-66, 461 N.E.2d 892; see, also, *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶51; *State v. Evans*, 1st Dist. No. C-100028, 2011-Ohio-2356, ¶6. The Ohio Supreme Court has recently clarified that, when determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. *State v. Johnson*, supra, syllabus.

{¶29} This court recently considered an identical argument in *State v. Baron*, 1st Dist. No. C-100474, 2011-Ohio-3204. In *Baron*, we held that the offenses of murder and having a weapon while under a disability were not allied offenses of similar import subject to merger because, in that case, the offenses had been committed both separately and with a separate animus. Id. at ¶19. Jones urges this court to distinguish *Baron* from the case at hand. In support of his argument, Jones notes that, in *Baron*, the defendant had possessed the firearm for a significant

amount of time before the murder took place. In contrast, Jones argues, the murder in this case occurred simultaneously to his possession of the weapon.

{¶30} Jones' argument fails. Like *Baron*, the offenses of murder and having a weapon while under a disability in this case were committed with a separate animus. The offense of murder required that Jones have the specific purpose to kill. The offense of having a weapon while under disability does not require a similar purposeful intent. After possessing the weapon, Jones purposely fired at Beauchamp, carrying out a motive and intent that was not present in his commission of the offense of having a weapon while under a disability. Because these offenses were committed with a separate animus, they were not allied offenses of similar import and were separately punishable. The fifth assignment of error is overruled.

{¶31} Having overruled Jones' assignments of error, we accordingly affirm the judgment of the trial court.

Judgment affirmed.

**DINKELACKER, P.J.**, and **CUNNINGHAM, J.,** concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.