[Cite as *State v. West*, 2013-Ohio-487.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98274**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## REONTE D. WEST

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-555955

**BEFORE:** Kilbane, J., Celebrezze, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** February 14, 2013

**ATTORNEY FOR APPELLANT**

Tyresha Brown-O'Neal
Brown-O'Neal Law
420 Lakeside Place
323 Lakeside Avenue, West
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Sherrie S. Royster
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Reonte West, appeals from his convictions for felonious assault, vandalism, possession of a firearm in a liquor permit premises, and having a weapon while under disability. This court notes that the indictment in this matter originally identified the defendant as "Rayonte West," the fraternal twin brother of defendant herein. On December 9, 2011, the State moved to amend the indictment to identify the defendant as "Reonte West," and explained that it had made a typographical error in identifying defendant as "Rayonte West." This court further recognizes that the State's motion to amend was not ruled upon in the lower court, but the motion was unopposed. In addition, the Cleveland Municipal Court charging documents and the probable cause determination were correctly issued in the name of "Reonte West." The common pleas trial court file, transcript of proceedings, the brief of the appellant, and the brief of the appellee all correctly identify the defendant as "Reonte West." Other portions of the record incorrectly identify the defendant as "Rayonte West." Therefore, we have sua sponte corrected the record in this appeal and in the Cuyahoga C.P. No. 555955 to identify "Reonte West" as the defendant in this matter.

{¶2} On November 7, 2011, following an alleged altercation with Michael Calhoun ("Calhoun") at Whitmore's Barbeque ("Whitmore's"), 15301 Kinsman Road in Cleveland, defendant was indicted pursuant to a six-count indictment. Counts 1 and 2

charged him with the felonious assault of Calhoun in violation of R.C. 2903.11(A)(1) (causing serious physical harm), and felonious assault in violation of R.C. 2903.11(A)(2) (causing physical harm with a deadly weapon). Count 3 charged him with vandalism of Whitmore's in violation of R.C. 2909.05(B)(1)(b), and Count 4 charged him with possessing a firearm in a liquor permit premises in violation of R.C. 2923.121. The first four counts also set forth one- and three-year firearm specifications. Count 5 charged defendant with having a weapon while under disability in violation of R.C. 2923.13(A)(3), and Count 6 charged him with criminal damaging in violation of R.C. 2909.06(A)(1).

{¶3} Defendant pled not guilty and waived his right to a jury trial as to the charge of having a weapon while under disability. The matter then proceeded to a jury trial on March 7, 2012.

{¶4} The State's evidence demonstrated that on September 15, 2011, at approximately 10:45 p.m., a shooting occurred at Whitmore's, and patron Calhoun was struck in the leg.

{¶5} Calhoun testified that he frequents Whitmore's regularly. He acknowledged that patrons, including himself, are usually patted down for weapons before they are permitted to enter the bar. He stated that he does not carry a gun. Calhoun further testified that he knows the defendant from the neighborhood, and that defendant's twin brother, Rayonte, is his friend. On the night of September 15, 2011, Calhoun and an acquaintance, George Grizzley ("Grizzley"), went to Whitmore's to sell concert tickets to

people at the bar. A security guard was on duty and patted down patrons for weapons. Calhoun ordered food in the restaurant section in the eastern half of the establishment and then went to the bar in the western half and spoke with the bartender. Another friend, Ravon Crockett ("Crockett") was also there. Defendant and his older brother, Rayshawn, entered the bar. According to Calhoun, defendant "stayed back, faked like he was going to walk past me, swung on me." Calhoun and defendant began to fight, and his brother Rayshawn "faked like he had a gun." Calhoun backed away, and patrons began to flee through the rear exit door. Defendant and Rayshawn walked to the front door, and Calhoun and his friends went toward the front door to watch them. Someone then warned Calhoun to watch out. According to Calhoun, defendant reentered the bar from the area of the emergency exit and aimed a gun at him. Calhoun began to run toward the back of the bar, but he could not get away. He heard a gunshot, and his legs went numb. Calhoun's friends carried him to the kitchen portion of the establishment and then called for an ambulance. Calhoun testified that he heard one shot inside Whitmore's then several other shots coming from outside. He then heard glass breaking.

{¶6} Calhoun was transported to MetroHealth Hospital where he received surgery on his leg. While in the hospital, Calhoun determined that he was going to "handle [the matter] in the street," so he told Cleveland police officers that he did not know who shot him. Later, however, he changed his mind, and when a detective indicated that the police received information that "Rayonte" was the shooter, Calhoun

informed the detective that the assailant was actually "Reonte," and identified defendant from a photo array.

{¶7} Calhoun acknowledged that he and the defendant are both friends with a female bartender and that he and defendant had argued prior to September 15, 2011. He indicated, however, that they never had a physical confrontation prior to that date. Calhoun denied that he called for someone to get his gun. Calhoun also denied that his friend Crockett had a weapon and denied that Crockett was the person who had shot him.


{¶8} Grizzley testified that he and Calhoun were together at Whitmore's, and that a security guard had searched each patron for weapons upon entry. He then stepped outside with Crockett. Someone told Grizzley that one of his relatives was involved in a fight so he went back inside. By this point, the fight had ended and he told Calhoun to be calm. Grizzley felt someone behind him and when he turned around, he saw someone aiming a weapon at them. The individual fired a shot, and Grizzley fell to the floor for safety. Grizzley acknowledged that it was dark in the bar and that he could not identify the assailant, but he was certain that he did not see Calhoun or Crockett with a gun.

{¶9} Roneshia Brown ("Brown"), the barmaid on duty that night, testified that she saw two men fighting with Calhoun, then afterward, a gunshot was fired into Whitmore's from the area of the exit door. Calhoun was struck in the leg so Brown called police. On cross-examination, Brown stated that the security guard was supposed to check identification and frisk every patron who enters, but he does not always do his

job well. She also stated that Crockett had been outside when the fight occurred, and he then re-entered the bar before the shooting started. She denied that Calhoun asked for his gun.

{¶10} Vanessa Whitmore ("Vanessa"), vice president of Whitmore's, testified that the establishment has an Ohio Liquor License and had a valid license on the date of the shooting. Vanessa further established that the emergency exit is unlocked during business hours and that it is possible to enter the establishment from that door.

{¶11} Crockett testified that he was at the bar with Calhoun and Grizzley. He stepped outside but came back inside the bar when he learned that Calhoun was involved in a fight. Crockett observed an individual restraining Calhoun, and Calhoun explained that he had just gotten into a fight with defendant. Crockett walked to the front door to see where defendant had gone. He then heard a gunshot and, when he re-entered the bar, Calhoun collapsed in his arms. At that point, an older man warned the group not to go outside because he had seen men with guns running through the parking lot.

{¶12} Crockett went outside to confront the security guard about what had happened, and he observed defendant at the car wash adjacent to Whitmore's. Crockett testified that defendant began shooting at him. One of the bullets struck the front window of the bar. Crockett ran inside and joined others hiding behind the restaurant counter as defendant continued to shoot at the building. Crockett testified that he did not have a weapon, that he did not shoot Calhoun, and that Calhoun was not accidentally shot

by one of his friends following the initial argument with defendant. He additionally stated that the security guard searched everyone who entered the premises.

{¶13} Crockett acknowledged that prior to this incident, Calhoun did not like the defendant, but he denied that Calhoun wished to harm the defendant.

{¶14} Cleveland police officers responded to the scene and obtained information that the shooter was Rayonte West, defendant's twin brother, and arrested him. Cleveland Police Detective Michael Shay subsequently spoke with Calhoun who identified Reonte as the shooter. Detective Gerald Sowul then prepared a six-person photo array that contained defendant's photograph, and Calhoun identified defendant as the assailant. However, Calhoun refused to make a written statement.

{¶15} Cleveland police officers recovered a shell casing from a .40 caliber semi-automatic handgun just inside the emergency door of the bar on the western half of the establishment, and two shell casings outside and across the street from the front of the premises. They also found a slug and glass shards inside the bar, beneath the front window, and another slug inside the bar near the jukebox. The officers also photographed a pool of blood on the floor of the restaurant portion in the eastern half of establishment.

{¶16} Patron Jermaine Henderson ('Henderson") testified that he was ordering food and heard someone shout that a man had a gun. Henderson fled out the back exit and hid near a dumpster. He heard shots being fired through Whitmore's. As Henderson left, he observed bullet holes in the driver's side passenger door of his Ford

F150 truck that was parked facing southward or away from the Whitmore's. The bullet penetrated the outer portion of his truck door and wedged toward the door frame.

{¶17} Defendant presented two witnesses, DeMarco Clayton ("Clayton") and Deanna Gibson ("Gibson"). Clayton testified that he observed defendant alone in the parking lot of Whitmore's. Defendant was talking on his cell phone and did not re-enter the establishment.

{¶18} Gibson testified that she had plans to meet defendant at Whitmore's bar on September 15, 2011. The security guard checked her for weapons and she waited for defendant. She then watched as the security guard also searched him for weapons. Neither had a gun. According to this witness, Calhoun approached defendant from behind, hit him in the face, and the two men started fighting. Calhoun then yelled for someone to give him his gun and said that he was going to shoot defendant. Defendant then ran out of the bar as gunshots were fired at him. Gibson further testified that shots continued to be fired from inside the bar after the defendant fled. She stated that she believes that one of the men with Calhoun accidentally shot Calhoun while firing at defendant.

{¶19} On March 14, 2012, defendant was convicted of both counts of felonious assault, vandalism, and illegally possessing a firearm in liquor permit premises, as well as the firearm specifications. The jury acquitted defendant of the charge of criminal damaging, and the court convicted defendant of the charge of having a weapon while under disability.

{¶20} The trial court referred the matter for a presentence investigation and report. On April 18, 2012, the court held a sentencing hearing. On that date, the trial court sentenced defendant to a total of nine years of imprisonment. The court merged the felonious assault convictions, and sentenced defendant to six years of imprisonment for felonious assault and three years of consecutive time for the firearm specification. The court also sentenced defendant to a total of four years for the vandalism charge (one year, plus three years for the firearm specification); six years for having a firearm in liquor permit premises (three years, plus three years for the firearm specification); and three years for having a weapon while under disability. All terms were ordered to be served concurrently with each count but consecutive with the firearm specification for a total sentence of nine years, and also imposed three years of mandatory postrelease control sanctions. Defendant now appeals and assigns three errors for our review.

{¶21} Defendant's first assignment of error states:

The convictions are against the manifest weight and the sufficiency of the evidence.

{¶22} Within this assignment of error, defendant maintains that the State failed to prove that he, rather than one of Calhoun's friends, was the assailant who fired shots in the bar and shot Calhoun.

{¶23} The Ohio Supreme Court in *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, explained the standard for sufficiency of the evidence as follows:

Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

**{¶24}** In this matter, Calhoun testified that the defendant left the bar after the initial fight. Calhoun then went to the front of the bar to watch for him, but defendant suddenly re-entered from the area of the emergency exit and aimed a gun at him. Calhoun began to run toward the back of the bar, but he could not get away. Although Calhoun did not initially cooperate with the police, he later identified Reonte as his assailant and identified him from a photo array. He testified at trial that he was positive that defendant is the person who shot him. In addition, Crockett testified that following the initial fight, he walked to the front door to see where defendant had gone. He then heard a gunshot and, when he re-entered the bar, he found that Calhoun had been shot. As Crockett went outside to confront the security guard about what had happened, he observed defendant at the car wash adjacent to Whitmore's. According to Crockett, defendant began shooting at him, striking the front window of the bar.

{¶25} In addition, the physical evidence corresponded with the testimony from these witnesses. Calhoun was struck in the back of his calf, which is consistent with his testimony that as he watched for defendant toward the front window of the bar, defendant re-entered from the emergency exit and began firing a handgun. Further, Cleveland police officers recovered a shell casing from a .40 caliber semi-automatic handgun just inside the emergency door of the bar on the western half of the establishment, and two shell casings outside and across the street from the front of the premises. They also found a slug and glass shards inside the bar, beneath the front window, and another slug inside the bar near the jukebox.

{¶26} Therefore, we conclude that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have concluded that defendant was the assailant in the shooting of Calhoun and the additional shooting that occurred inside and toward Whitmore's. The State presented sufficient evidence to establish that defendant knowingly caused serious physical harm to Calhoun in violation of R.C. 2903.11(A)(1), that he knowingly caused physical harm to Calhoun by means of a handgun, in violation of R.C. 2903.11(A)(2), that he caused physical harm to the bar with a deadly weapon, in violation of R.C. 2909.05(B)(1)(b), and that he possessed a firearm in liquor permit premises in violation of R.C. 2923.121. There is also sufficient evidence to establish that while defendant had the firearm, he was subject to a disability in connection with Case No. CR-506151, as alleged by the State. There is sufficient evidence to support the convictions in this matter.

**{¶27}** With regard to a manifest weight challenge, the Ohio Supreme Court in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, states:

> [T]he reviewing court asks whose evidence is more persuasive — the state's or the defendant's? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." [*Thompkins* at 387], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

**{¶28}** Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin*.

**{¶29}** In this matter, the State's evidence demonstrated that defendant exited the bar after fighting with Calhoun and that he then re-entered through the emergency door and began firing, striking Calhoun in the back of his leg. The defendant then fled out of the building to the adjacent parcel, then shot at Crockett, shattering Whitmore's front window. Moreover, the testimony of the each of the State's witnesses was corroborated by the physical evidence, including shell casings located just inside the emergency exit door and a spent shell located among glass fragments inside the bar beneath the front window. The evidence presented by the defense, on the other hand, conflicted with the

physical evidence, including shell casings located across the street from Whitmore's and broken glass found inside the restaurant. Therefore, we are unable to conclude that the jury clearly lost its way and created such a manifest miscarriage of justice in convicting defendant in this matter, or that this is the exceptional case in which the evidence weighs heavily against the conviction. The convictions are not against the manifest weight of the evidence.

**{¶30}** The first assignment of error is without merit.

**{¶31}** Defendant's second assignment of error states:

The Appellant was unduly prejudiced, at sentencing, by the testimony of [two Cleveland police officers] with regard to the past unconfirmed conduct of [Defendant] and his brother Rayonte West.

**{¶32}** Within this assignment of error, defendant complains that the remarks of two Cleveland police officers regarding defendant's uncharged "other acts" prejudiced his sentencing hearing.

**{¶33}** In *State v. Blake*, 3d Dist. No. 14-03-33, 2004-Ohio-1952, the court held that a trial court may not impose a sentence that is predicated upon the court's belief that the defendant is guilty of other offenses where there is no evidence that he committed those offenses.

The *Blake* court explained that

"[a]lthough all of these things can be considered to determine likelihood to recidivate, they cannot be the sole basis for imposing the maximum sentence. To allow that is to permit [the defendant] to be convicted of those offenses without a trial or an opportunity to defend himself by

cross-examining the witnesses." *Accord State v. Fisher*, 11th Dist. No. 2002-L-020, 2003-Ohio-3499, *State v. Park*, 3d Dist. No. 3-06014, 2007-Ohio-1084.

**{¶34}** In this matter, the record reflects that after the verdict was announced, the trial court referred the matter for a presentence investigation and report. The court then held a sentencing hearing approximately one month later, on April 18, 2012. At that time, the court advised defendant that it had read the letters submitted on his behalf, and the court then permitted two Cleveland police officers to address the court. The officers stated that the police have been to defendant's family's home on multiple occasions, that defendant's "name [comes] up over and over again regarding violent situations, usually towards women," and that the family is uncooperative with police.

**{¶35}** In this matter, after hearing from the police officers and from the defendant, the trial court stated as follows:

> The Court has considered all the relevant seriousness and recidivism factors, the overriding purposes and principles of sentencing; namely to protect the public from future crime by defendant and others, and also to punish the defendant using the minimum sanctions * * *
>
> [T]his was a bad case, in my view. I mean, not only were the injuries severe, I think there were several operations that required skin grafts.
>
> It was a situation where anyone could have been hurt or killed, because they were in a bar, and I just think that's reckless. I think that is reflective of not caring about human life.
>
> I mean, it's just beyond my comprehension that someone would just start firing a gun in a bar with plenty of people in there.
>
> I mean, if you had a beef with the guy, it's bad enough that you're trying to hurt him, but you're hurting, trying to hurt him in a manner where you can hurt any innocent bystander. * * *

I mean, I don't understand, in the time that we live, when there's more opportunities than ever, why it's almost like you young men are living in the dark ages, shooting each other up and shooting things up and just random craziness.  It just doesn't make sense.

So I do believe that a minimum sentence would be inappropriate.  I believe that the Court must protect the public from people who will react to situations like this, in the manner that you reacted.

**{¶36}** From the foregoing, the trial record indicates that the court did not consider the remarks of the officers when it fashioned its sentence, as the court did not mention the other uncharged conduct or reference the officers' remarks regarding defendant's alleged general propensity for violence.  To the contrary, the court required a presentence investigation, considered letters offered on defendant's behalf, and reflected at length upon the seriousness of the offenses, the harm that defendant had caused, and the need to protect the public.  In any event, the trial court did not impose a maximum term on any count. There is, therefore, no basis upon which we can conclude that the officers' remarks tainted the proceedings.  *State v. Treesh*, 90 Ohio St.3d 460, 488, 2001-Ohio-4, 739 N.E.2d 749.

**{¶37}**  Moreover, applying the two-step approach for reviewing reviewing a felony sentence set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 4, we find no error.  That is, examining all applicable rules and statutes in imposing the sentence, we conclude that the sentence is not clearly and convincingly contrary to law, because the six-year term imposed for felonious assault, a felony of the second degree, is within the two to eight year statutory range for that offense. R.C. 2903.11 and 2929.14(A).  Similarly, the one-year term for vandalism, a fifth-degree

felony, is within the six to twelve month statutory range for this offense under R.C. 2909.05(B)(1)(b) and R.C. 2929.14(A)(5). The three-year term for illegally possessing a firearm in liquor permit premises, a third-degree felony, is within the twelve to sixty month statutory range for this offense under R.C. 2909.05(E) and R.C. 2929.14(A)(3). The three-year term for having a weapon while under disability, a third degree felony under R.C. 2923.13(B), is within the nine to thirty-six month range for this offense. R.C. 2929.14(A)(3)(b). Therefore, the trial court imposed a sentence within the permissible statutory ranges herein, never imposing a maximum term, and we find no abuse of discretion in connection with the sentence terms. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at paragraph seven of the syllabus. The second assignment of error is without merit.

**{¶38}** Defendant's third assignment of error states:

The trial court failed to merge counts 2, 4, & 5 of the indictment.

**{¶39}** In this assignment of error, defendant asserts that his convictions for felonious assault under R.C. 2903.11(A)(2) (causing physical harm with a deadly weapon), possessing firearm in liquor permit premises in violation of R.C. 2923.121, and having a weapon while under disability in violation of R.C. 2923.13(A)(3) are allied offenses of similar import.

**{¶40}** Under Ohio law, "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information

may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A). But

> "[w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." R.C. 2941.25(B).

**{¶41}** In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court redefined the test for determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25. The *Johnson* court expressly overruled *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, which required a "comparison of the statutory elements in the abstract" to determine whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other. Pursuant to *Johnson*, the conduct of the accused must be considered in determining whether two offenses should be merged as allied offenses of similar import under R.C. 2941.25. *Id.*, at the syllabus. The determinative inquiry is two-fold: (1) "whether it is possible to commit one offense and commit the other with the same conduct," and (2) "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 48-49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id.* at ¶ 50. "Conversely, if the court determines that the commission of one offense will never result

in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Id*. at ¶ 51.

{¶42} In the instant case, for the purposes of sentencing, the trial court merged the felonious assault convictions in Counts 1 and 2 that pertained to Calhoun. Defendant claims that the felonious assault under R.C. 2903.11(A)(2) (causing physical harm to Calhoun with a deadly weapon), possessing a firearm in a liquor permit premises in violation of R.C. 2923.121, and having a weapon while under disability in violation of R.C. 2923.13(A)(3) are allied offenses of similar import.

{¶43} In *State v. Cowan*, 8th Dist. No. 97877, 2012-Ohio-5723, this court considered whether the offenses of felonious assault, having a weapon while under disability, improper handling of a firearm in a motor vehicle, and discharge of a firearm near a prohibited premises, were committed with one animus and should have merged. The court stated:

> The felonious assault conviction was the result of Cowan shooting at Robert. However, the improper handling of a firearm in a motor vehicle and discharge of a firearm on or near a prohibited premises occurred approximately one hour before. The improper handling of a firearm concerned Cowan's driving away with a loaded revolver after stranding his passengers. The discharge of a firearm concerned Cowan shooting his gun twice at the ground while sitting in the vehicle, after threatening Artemus. Therefore, these offenses each involved a separate animus and could not result in the commission of each other under these factual circumstances.
>
> We also conclude that the animus of having a weapon under disability is making a conscious choice to possess a weapon. Here, Cowan necessarily acquired the guns sometime prior to committing the other crimes. The fact that he then used the weapons to commit the other crimes does not absolve

Cowan of the criminal liability that arises solely from his decision to illegally possess the weapons. *See State v. Jones*, 1st Dist. No. C-110059, 2011-Ohio-6633; *State v. Dillingham*, 12th Dist. No. CA2011-03-043, 2011- Ohio-6348; *State v. Bray*, 2d Dist No. 2010 CA 14, 2011-Ohio-4660.

*Id.*; *accord State v. Elder*, 5th Dist. No. 2011-CA-00058, 2011-Ohio-4438 (animus for possessing a weapon under disability is different from the animus for felonious assault).

**{¶44}** We further note that in *State v. Young*, 2d Dist. No. 23642, 2011-Ohio-747, the court addressed a bar fight that escalated into a fatal shooting and considered whether the defendant could be convicted and sentenced for carrying a concealed weapon, illegal possession of a firearm in a liquor permit establishment, and having a weapon while under disability. The court analyzed the issue as follows:

Young, a person under disability, necessarily acquired a handgun sometime before concealing it on his person. Thus, the elements of proof for having a weapon while under disability were satisfied when Young acquired the firearm. His subsequent conduct of concealing the handgun constituted a separate and distinct act from initially acquiring the weapon. Similarly, Young acquired the handgun and concealed it on his person before entering a liquor-permit establishment. His subsequent conduct of bringing the weapon into a bar constituted a separate and distinct act from acquiring and concealing it. As a result, each of these offenses was committed separately under R.C. 2941.25(B). Therefore, even if the crimes were allied offenses under R.C. 2941.25(A), the trial court did not err in convicting and sentencing Young separately for carrying a concealed weapon, illegal possession of a firearm in a liquor-permit establishment, and having a weapon while under disability.

*Id.* at ¶ 49.

**{¶45}** Analyzing defendant's conduct with these concepts in mind, we note that defendant, a person under a weapons disability, had a gun ready at hand on the night of September 15, 2011. He was in possession of that gun prior to entering the bar through

the emergency exit. Once inside with the gun, he then shot Calhoun, fled from the bar, then continued to fire shots into Whitmore's from across the street. Therefore, the record demonstrates that the offense of having a weapon while under a disability had already occurred before defendant entered the bar. Thereafter, he possessed the gun inside the bar, before committing the offense of felonious assault upon Calhoun. Therefore, we conclude that defendant's conduct resulted in the commission of three distinct offenses committed separately and with a separate animus as to each. He was therefore properly convicted and sentenced on the three individual charges of felonious assault on Calhoun, possession of a firearm in a liquor permit premises, and having a weapon while under disability pursuant to R.C. 2941.25(B).

**{¶46}** The third assignment of error is without merit.

**{¶47}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
PATRICIA A. BLACKMON, J., CONCUR